IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GEORGE J. PISARZ, JR., | : | Case No. 4:10-cv-01432 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| PPL CORPORATION, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

January 21, 2014

For the reasons that follow, defendant PPL Corporation's motion to enforce settlement (Dec. 28, 2012, ECF No. 85) is granted.

**I.    General Background**

On December 28, 2012, defendant PPL Corporation (hereinafter, "PPL") moved to enforce what it maintained was a valid settlement agreement with plaintiff George J. Pisarz, Jr. In a Memorandum and Order dated April 19, 2013, the Court held that PPL's motion "must be denied at this time" because "the Court has determined that there is a genuine dispute as to whether Pisarz's counsel possessed [settlement] authority when the terms of the settlement were agreed upon." (ECF No. 99 at 6). In order to resolve the dispute, the Court scheduled an October 15, 2013 evidentiary hearing, which was later continued to November 26, 2013.

This memorandum sets forth the Court's findings of fact – which the Court makes on the basis of the evidence admitted at the November 26, 2013 hearing – and conclusions of law.

## II.   Legal Framework

PPL, as the party seeking to enforce a purportedly valid settlement agreement, bears the burden of proving that Mr. Pisarz granted the authority to enter into the agreement to his attorney. See Mowrer v. Warner-Lambert Co., 2000 WL 974394, at *5 (E.D. Pa. July 13, 2000). Under the law of Pennsylvania, which applies here, it is "clear and well-settled that an attorney must have express authority in order to bind a client to a settlement agreement." Reutzel v. Douglas, 582 Pa. 149, 870 A.2d 787, 789-90 (2005). "Express authority" empowering an attorney to settle a client's claim "must be the result of explicit instructions regarding settlement." Tiernan v. Devoe, 923 F.2d 1024, 1033 (3d Cir. 1991). See also Restatement (Second) of Agency § 7 cmt. c (1958) ("It is possible for a principal to specify minutely what the agent is to do. To the extent that he does this, the agent may be said to have express authority. But most authority is created by implication . . . from the words used, from customs and from the relations of the parties."). Accordingly, the Court's task is to determine whether PPL has shown, by a preponderance of evidence, that Mr. Pisarz explicitly instructed his counsel to

agree to the settlement reached with PPL.

### III.   Findings of Fact

On October 16, 2012, counsel for PPL, Darren Creasy, Esquire, informed the Court that "this matter [i.e. Pisarz v. PPL Corp.] has been resolved by agreement of the parties, subject to the execution of a Settlement Agreement." (ECF No. 81). Indeed, in an e-mail dated October 11, 2012, counsel for Mr. Pisarz, Timothy Kolman, Esquire, of the law firm Kolman Ely P.C. (hereinafter, "Kolman Ely"), confirmed "acceptance of PPL's settlement offer of $145,000 (one hundred forty five thousand dollars) in full and complete settlement of any and all claims." (Def. Ex. 7). In addition, Mr. Kolman assented to the following: "Mr. Pisarz will also receive pension credit for years of service from 2008 through the date of agreement (which will be deemed his retirement/resignation date). Mr. Pisarz's acceptance of this offer includes the execution of a general release and settlement agreement, which we [PPL] will prepare, as well as all non-financial terms and conditions previously discussed." (Id.).

That much is agreed. The parties's dispute involves whether Mr. Pisarz expressly authorized Mr. Kolman to assent to the settlement, particularly the portion requiring Mr. Pisarz to retire/resign on the date of the settlement agreement. Mr. Pisarz claims that no later than June 12, 2012, he notified Kolman Ely that he would

"not retire," and that he would, rather, "stay on [workers' compensation] for insurance and medical reasons," as well as to sustain "pension accruals" that continued only so long as Mr. Pisarz was on workers compensation (i.e., not retired). (Pl. Ex. 3; Pisarz Test., Tr. at 69-70). (The Court notes that PPL disputes whether Mr. Pisarz properly understands the relationships between workers compensation, pension accruals, insurance, et cetera). Likewise, he maintains that on September 22, 2012 he told his counsel, Kolman Ely's Laura Siegle, that he would "not give up [his] [sic] workman's compensation because of the benefits that go with it," and that this point was "not negotiable." (Pisarz Test., Tr. at 69).

The Court finds that, although Mr. Pisarz held concerns regarding the effect of a settlement with PPL on the benefits he associated with workers' compensation, and expressed these concerns to Kolman Ely in various ways at various times, Mr. Pisarz had granted Mr. Kolman authority to settle his case on the terms agreed to with PPL on October 11, 2012. The Court finds the material facts to be as follows:

1. On September 12, 2012, at 3:25 p.m., Ms. Siegle made a purely financial[1] settlement demand ($250,000) of PPL. (Siegle Test., Tr. at 7-8; Def. Ex. 1).

---

[1] By "purely financial," the Court means that the settlement would not provide for Mr. Pisarz to remain a PPL employee; i.e., he would retire as of the date of settlement.

4

2. On September 12, 2012, at 4:04 p.m., after speaking with Mr. Pisarz, Ms. Siegle made a purely financial settlement demand ($500,000) of PPL. (Siegle Test., Tr. at 8-9; Def. Ex. 2).

3. When Ms. Siegle made the settlement demands of September 12, 2012, she made them after reasonably concluding that she had the express authorization of Mr. Pisarz, who manifested an understanding that the offers were "in terms of money only." (Pisarz Test., Tr. at 86).

4. At a September 18 or 19, 2012 pretrial conference, Ms. Siegle, in the presence of Mr. Pisarz and after reasonably concluding that she acted with his express authorization, made a purely financial settlement demand of PPL. (Siegle Test., Tr. at 11-12).

5. When Ms. Siegle made a settlement demand on September 18 or 19, 2012, Mr. Pisarz did not inform her that she had misrepresented his authority. (Siegle Test., Tr. at 12).

6. On September 22, 2012, Ms. Siegle met with Mr. Pisarz and, after discussing the interaction between Mr. Pisarz's workers' compensation benefits and a potential settlement with PPL, Siegle reasonably concluded that she was expressly authorized to settle his case on purely financial terms so long as Mr. Pisarz's pension accruals (which he

associated with his status as a recipient of workers' compensation) would continue until the date of settlement/retirement.[2] (Siegle Test., Tr. at 21-22; Pisarz Test., Tr. at 69, 71, 87-88).

7. On September 25, 2012, after speaking with Mr. Pisarz, Ms. Siegle made a purely financial settlement demand ($300,000) of PPL. (Siegle Test., Tr. at 10; Def. Ex. 3).

8. When Ms. Siegle made the settlement demand of September 25, 2012, she did so after reasonably concluding that she had the express authorization of Mr. Pisarz, who manifested an understanding that the offer was "in terms of money only." (Pisarz Test., Tr. at 86).

---

[2] The Court concludes this meeting occurred on September 22, 2012 based on the following. Mr. Pisarz and Ms. Siegle met for the first time at a pretrial conference on September 18 or 19, 2012. (See ECF No. 69; Siegle Test., Tr. at 14; Pisarz Test., Tr. at 68). Mr. Pisarz communicated his desire to remain on workers' compensation to Ms. Siegle on one of two Saturdays afterward – September 22 or 29, 2012 – the only two Saturdays "shortly before the case was headed for trial" on October 1, 2012. (Siegle Test., Tr. at 14; Pisarz Test., Tr. at 68; ECF Nos. 57 & 75). It is unlikely that Siegle met with Pisarz "for the purpose of preparing him to testify at trial" (Siegle Test., Tr. at 14) on September 29, 2012, because Judge Yvette Kane ordered an indefinite continuance of trial on September 28, 2012. Likewise, it is unlikely that Siegle met with Pisarz on September 29, 2012, because by that time she had largely handed the case off to Mr. Kolman who, by Tuesday, October 2, 2012, was familiar enough with Pisarz to write a lengthy letter to him out of frustration that Pisarz had rebuffed his (Kolman's) attempts to discuss the case. (Kolman Test., Tr. at 30). Finally, Pisarz himself remembered the date as September 19 or 20, 2012, which is closer to September 22, 2012. (Pisarz Test., Tr. at 87). Accordingly, the Court concludes that Pisarz communicated his desire to remain on workers' compensation to Siegle on September 2, 2012.

6

9. Soon after September 25, 2012, Ms. Siegle's colleague, Mr. Kolman, took control of representing Mr. Pisarz in his (Pisarz's) case against PPL. (Kolman Test., Tr. at 28).

10. After Mr. Pisarz rebuffed Mr. Kolman's attempts to discuss Pisarz's case against PPL, Kolman sent Pisarz a letter on October 2, 2012. (Kolman Test., Tr. at 29, 49).

11. The letter explained, "This firm, through great efforts, has persuaded Defendant PPL to pay the significant sum of $125,000.00. They have agreed to full pension accrual (as though you had been working to date). They have agreed that this settlement will not affect your [workers' compensation] claims/recoveries." (Def. Ex. 5).

12. Mr. Pisarz received the October 2, 2012 letter from Mr. Kolman. (Pisarz Test., Tr. at 72).

13. From the October 2, 2012 letter sent to him by Mr. Kolman, Mr. Pisarz may or may not have understood that an aspect of the proposed settlement would be accrual of his pension credits up to the date of settlement/retirement. (Pisarz Test., Tr. at 90-91).

14. Mr. Kolman and Mr. Pisarz spoke by telephone on October 5, 2012. (Pisarz Test., Tr. at 73-75).

15. On the October 5, 2012 call, Mr. Kolman and Mr. Pisarz discussed the

settlement terms set forth in Kolman's October 2, 2012 letter, and Pisarz manifested an understanding that the terms provided for pension accrual up to the date of settlement/retirement. (Kolman Test., Tr. at 34-35; Pisarz Test., Tr. at 90-91).

16. Mr. Pisarz otherwise did not raise the issues of pension accrual, insurance, or retirement on the call. (Kolman Test., Tr. at 29, 31-32, 35-36).

17. Mr. Kolman reasonably concluded that Mr. Pisarz expressly assented to the settlement terms communicated in the October 2, 2012 letter, including pension accrual up to the date of settlement/retirement, and Kolman ultimately recorded assent to the settlement terms set forth in the October 2, 2012 letter from Kolman to Pisarz. (Kolman Test., Tr. at 34-36; Pisarz Test., Tr. at 90-91).

18. Mr. Kolman and Mr. Pisarz did not speak between October 6, 2012 and October 11, 2012, the date upon which Kolman agreed to settle the case with PPL. (Pisarz Test., Tr. at 75).

19. On October 11, 2012, Mr. Kolman agreed to settle Mr. Pisarz's case against PPL on terms memorialized in an e-mail of that date. (Def. Ex. 7).

20. Mr. Kolman sent Mr. Pisarz a letter, dated October 12, 2012, to notify

Pisarz that his case had been "resolved for $145,000, including the pension portion which was previously communicated to you." (Def. Ex. 8).

21. By referring to "the pension portion which was previously communicated to you," Mr. Kolman intended to reference his previous communication by letter of October 2, 2012, in which he wrote that PPL "agreed to full pension accrual (as though you had been working to date)." (Kolman Test., Tr. at 38-39).

22. Mr. Pisarz may or may not have understood that, by referring to "the pension portion which was previously communicated to you," Mr. Kolman was referencing accrual of Pisarz's pension up to the date of settlement/retirement. (Pisarz Test., Tr. at 91).

23. On October 18, 2012, Mr. Pisarz wrote a letter to Mr. Kolman. (Pl. Ex. 9).

24. The October 18, 2012 letter stated: "I received your letter dated [sic] 10/18/12. You mentioned [sic]; that the case is resolved for $145,000, including the pension portion which was communicated to you. I would like that clarified to state in the agreement that my pension will continue to accrue as it was prior to the lawsuit." (Pl. Ex. 9).

25. Mr. Kolman believed he did not need to act on Mr. Pisarz's October

18, 2012 letter because, by the terms of the settlement Kolman reached with PPL, Pisarz's pension would continue to accrue through the date of settlement/retirement, which is what Kolman thought Pisarz was writing to ensure. (Kolman Test., Tr. at 56).

Underlying the Court's enumerated findings are two ancillary findings: (1) that Mr. Pisarz's counsel, both Ms. Siegle and Mr. Kolman, continually endeavored to be faithful to Pisarz's wishes regarding settlement (Siegle Test, Tr. at 9, 12, 19, 21-22; Kolman Test., Tr. at 27-28, 34-36); and (2) that Siegle and Kolman appear to be highly competent attorneys as a general matter, and, in Kolman's case, highly experienced. (Siegle Test., Tr. at 14; Kolman Test., Tr. at 25-26).

### IV. Conclusions of Law

It is worth remembering that the Court's inquiry is limited to determining whether Mr. Pisarz granted his counsel express authority to settle his case on the terms memorialized by Mr. Kolman and PPL's counsel in an October 11, 2012 e-mail. The inquiry does not concern Pisarz's private desires. Only his public manifestations of consent (or lack thereof) to the settlement are relevant.

Further, although Pennsylvania's rule requiring attorneys to obtain express settlement authority is intended to ensure that clients do not "forfeit substantial legal rights" unknowingly, Reutzel, 870 A.2d at 790, attorneys are not expected to be telepathists or even infallible interpreters of clients's verbalized communications.

An attorney is, rather, expressly authorized to settle a client's case "if he is reasonable in drawing an inference that the [client] intended him so to act although that was not the [client's] intent." Restatement (Second) of Agency § 7 cmt. b. The rule requiring attorneys to obtain express settlement authority provides limited protection for clients; namely, it does not protect clients against the risk of reasonable misapprehension attendant on even careful use of the English language.

With these principles in mind, it should be clear from the Court's factual findings supra that the Court holds that Mr. Pisarz granted Kolman Ely express authority to reach the October 11, 2012 settlement with PPL. That is to say, by a preponderance of the evidence, PPL has carried its burden of showing that, whether Pisarz's true intention or not, Kolman Ely attorneys (including Mr. Kolman on the date of settlement) were reasonable in inferring from Pisarz's express communications that he (Pisarz) granted them authority to settle on the terms reached with PPL on October 11, 2012. Accordingly, the settlement should be enforced in the absence of other reasons for non-enforcement.

Mr. Pisarz does raise one additional argument for non-enforcement. He contends that execution of a formal settlement agreement was a condition precedent to settlement. The Court disagrees. As set forth supra, Pisarz and PPL agreed to the essential terms of settlement on October 11, 2012, in an e-mail stating:

> Please allow this e-mail to confirm Mr. Pisarz's acceptance of PPL's

> settlement offer of $145,000 (one hundred forty five thousand dollars) in full and complete settlement of any and all claims, including claims for attorney's fees, interest, costs, etc. Mr. Pisarz will also receive pension credit for years of service from 2008 through the date of agreement (which will be deemed his retirement/resignation date). Mr. Pisarz's acceptance of this offer includes the execution of a general release and settlement agreement, which we will prepare, as well as all non-financial terms and conditions previously discussed.

(Def. Ex. 7). Like the parties in Forte Sports, Inc. v. Toy Airplane Gliders of Am., Inc., 371 F. Supp. 2d 648 (E.D. Pa. 2004), who agreed to execute an "appropriate agreement" to formalize terms already agreed to, id. at 648, the parties here made it relatively clear in the October 11, 2012 e-mail that the purpose of any future settlement agreement would be merely to formalize what had been "previously discussed." A fair reading of the e-mail fails to suggest any desire of the parties to risk all the fruits of negotiations theretofore on the contingency of each other's second thoughts or the success of further negotiations. Thus, just as in Forte Sports, the e-mail "cannot be reasonably interpreted to mean that a signed writing incorporating its terms was a condition precedent." Id. at 650. See also Wineburgh v. Wineburgh, 2002 Pa. Super. 415, 816 A.2d 1105, 1109 (2002) ("[W]hile the parties to a contract need not utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention.") (quoting Davis v. Gov't Emp. Ins. Co., 2001 Pa. Super. 140, 775 A.2d 871, 874

(2001)).[3]

## V.   Conclusion

For the foregoing reasons, defendant PPL Corporation's motion to enforce settlement (Dec. 28, 2012, ECF No. 85) is granted.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[3]There is a consequential distinction between the circumstances in Mizutania v. Happy Huckster, Corp., 847 F. Supp. 2d 702 (E.D. Pa. 2012), and those here. There, counsel for the defense "insisted" that, before defense counsel would remit $7,000 in settlement, the plaintiff had to sign the release he (defense counsel) had already drafted and sent to plaintiff's counsel. The release he had sent to plaintiffs counsel, moreover, provided for a 21-day signing period and a 7-day revocation period. Here, on the other hand, nothing in the October 11, 2012 e-mail indicates that PPL was extra-sensitive to the particular form of general release and settlement agreement Mr. Pisarz would sign, or that PPL intended to give Pisarz a signing and revocation period. PPL merely undertook to prepare formal documentation (which ultimately did include a signing and revocation period). There is nothing in the parties's October 11, 2012 e-mail exchange to suggest that the parties's obligations were conditioned upon the prior execution of a general release and settlement agreement.